IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:19-cv-02926-KLM

KATHERINE SMITH,

     Plaintiff,

v.

RITE OF PASSAGE, INC., doing business as Rite of Passage, and
MATTHEW MARTINEZ,

     Defendants.

---

## MOTION TO DISMISS CLAIMS AGAINST RITE OF PASSAGE

---

Defendant Rite of Passage ("ROP") by and through its attorneys, Hall & Evans LLC, and pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), respectfully requests that this Court dismiss Plaintiff Katherine Smith's claims against ROP because Plaintiff's factual allegations[1] are insufficient to maintain her causes of action against ROP.

## **INTRODUCTION**

Plaintiff's claims arise from Plaintiff's alleged mistreatment and underpayment while employed as Registrar at the Betty K. Marler Youth Services Center ("BKMYSC"). Plaintiff asserts nine causes of action against the named Defendants, including seven claims against ROP. Plaintiff's claims against ROP include: Violation of the Sex Discrimination and Harassment provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. ("Title VII")

---

[1] ROP accepts the allegations in Plaintiff's Complaint as true only for purposes of this Motion to Dismiss.

(First Cause of Action); Retaliation for Complaints of Sex Discrimination and Harassment under Title VII (Second Cause of Action); Violation of the Minimum Wage Provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 206 (Third Cause of Action); Violation of the Overtime Provision of the FLSA, 29 U.S.C. § 207 (Fourth Cause of Action); Violation of the Sex Discrimination and Harassment provisions of Colorado's Anti-Discrimination Act ("CADA"), C.R.S. § 24-34-301 (Fifth Cause of Action); Retaliation for Complaints of Sex Discrimination and Harassment under CADA (Seventh Cause of Action); and Violation of Colorado's Minimum Wage Act ("CMWA"), C.R.S. § 8-6-101 *et seq*. as implemented by the Colorado Minimum Wage Order ("CMWO"), 7 C.C.R. 1103-1 (Ninth Cause of Action).   All of Plaintiff's claims against ROP fail in the pleadings.[2]

## **STANDARD OF REVIEW**

### I. **FED. R. CIV. P. 12(B)(1) STANDARD OF REVIEW**

Rule 12(b)(1) empowers a court to dismiss a complaint for lack of subject matter jurisdiction.  Fed. R. Civ. P. 12(b)(1).  Dismissal under Rule 12(b)(1) is not a judgment on the merits of a plaintiff's case, but only a determination that the court lacks authority to adjudicate the matter.  *See Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994) (recognizing federal courts are courts of limited jurisdiction and may only exercise jurisdiction when specifically authorized to do so).  A court lacking jurisdiction "must dismiss the case at any stage of the proceeding in which it becomes apparent that jurisdiction is lacking."  *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974).

---

[2] Counts VI and VIII are brought against Defendant Matthew Martinez only and therefore ROP does not respond to these claims.

## II.     FED. R. CIV. P. 12(B)(6) STANDARD OF REVIEW

On a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a court assesses the legal sufficiency of the allegations contained within the four corners of the complaint.  *Archuleta v. Wagner*, 523 F.3d 1278, 1281 (10th Cir. 2008).  The court accepts as true all well-pleaded facts, viewing them in the light most favorable to the plaintiff and allowing all reasonable inferences in favor of the plaintiff.  *Id.* at 1283; *Atl. Richfield Co. v. Farm Credit Bank*, 226 F.3d 1138, 1160 (10th Cir. 2000).

This deference is inapplicable to legal conclusions in the complaint.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A court "should disregard all conclusory statements of law and consider whether the remaining specific factual allegations, if assumed to be true, plausibly suggest the defendant is liable."  *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011); *see Iqbal*, 556 U.S. at 678.  The court does not accept as true a legal conclusion couched as a factual allegation.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Factual allegations "must be enough to raise a right to relief above the speculative level." *Id.*   The complaint must go beyond "an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Iqbal*, 556 U.S. at 678.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*; *see Twombly*, 550 U.S. at 555 (mere "labels and conclusions" and "formulaic recitation of the elements of a cause of action" are insufficient); *Robbins v. Okla. ex rel. Dept. of Human Servs.*, 519 F.3d 1242, 1247 (10th Cir. 2008).  "The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief."  *Robbins*, 519 F.3d at 1247.  "[P]lausible" cannot mean "likely to be true," but "must refer to the scope of the allegations in a complaint: if they are so

general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" **Id.** (quoting **Twombly**, 550 U.S. at 570).

## ARGUMENT

### I.  PLAINTIFF'S FIFTH AND SEVENTH CAUSES OF ACTION AGAINST ROP ARE TIME BARRED BY CADA'S NINETY DAY DEADLINE TO FILE CLAIMS

Colorado law requires discrimination plaintiffs to file suit within 90 days after the CCRD's jurisdiction ceases. *See* C.R.S. § 24-34-306(11) ("action must be filed within ninety days of the date upon which the jurisdiction of the commission ceased, and if not so filed, it shall be barred and the district court shall have no jurisdiction to hear such action")  The Colorado Revised Statutes require that a civil action alleging discriminatory or unfair practices be filed within ninety days of either (a) CCRD's notice of no probable cause; or (b) if an appeal is filed, after the Commission's notice dismissing the appeal. C.R.S. § 24-34-306(2)(b)(I)(B).  At that point, a plaintiff has exhausted administrative review under CADA, CCRD jurisdiction ceases, and the matter is ripe for litigation. **Robinson v. Reg'l Transp. Dist.**, 2018 U.S. Dist. LEXIS 89047 at *6, 2018 WL 2414866, at *6 (D. Colo. May. 29, 2018); **Bankston v. Antlers Hilton Hotel**, 2011 U.S. Dist. LEXIS 142562 at *4, 2011 WL 6153024 at *4 (D. Colo. Nov. 3, 2011); *see also* **Jackson v. City and Cnty. of Denver**, 2012 U.S. Dist. LEXIS 136185 at * 2, 2012 WL 4355556, at *2 (D. Colo. Sept. 24, 2012) ("Under CADA, a plaintiff exhausts administrative remedies when he obtains a notice of right to sue from the CCRD.").  If a party fails to file suit within ninety days, the claim is "barred, and no district court shall have jurisdiction to hear the action."  C.R.S. § 24-34-306(2)(b)(I)(C).  The absolute bar to filing after ninety days applies equally in state and federal court.  **Fleites v. Pueblo Med. Inv'rs, LLC**, 2008 U.S. Dist. LEXIS 81401 at *3, 2008 WL

4371924, at *3 (D. Colo. Sept. 22, 2008) (applying CADA's ninety-day rule for bringing state claims).

Only CCRD's notice letter is relevant to trigger the ninety-day filing period for state claims; "[t]he Notice of Right to Sue from the Equal Employment Opportunity Commission ("EEOC") is irrelevant in this analysis because it only goes to federal claims." *Bankston*, 2011 WL 6153024, at *4 n.2. In *Bankston*, the court held that, even though the plaintiff filed his complaint sixty-six days after the notice from EEOC, the plaintiff's CADA claim was barred because plaintiff filed his complaint over 550 days after CCRD's jurisdiction ceased. *Id.* at *4. Bankston's EEOC's letter had no impact on the plaintiff's CADA claims. *Id.* at *4 n.2.

Here, CCRD sent a notice of no probable cause to Plaintiff on May 2, 2019. Plaintiff did not file an appeal. Thereafter, the EEOC affirmed the CCRD decision and sent a letter on July 19, 2019, which included a notice that any lawsuit concerning the claims considered by CCRD—that is, Plaintiff's state claims—must be filed within ninety days. Ninety days from the date of the notice was July 31, 2019. Plaintiff did not file her civil action until October 15, 2019, seventy-six days after the July deadline and 166 days after receipt of the CCRD Right to Sue letter. [*See* CCRD Determination Letter, attached as **Exhibit A**.][3]

---

[3] *Holt v. U.S.*, 46 F.3d 1000, 1003 (10th Cir. 1995) ("A court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1)") (citing *Ohio Nat'l Life Ins. Co. v. U.S.*, 922 F.2d 320, 325 (6th Cir. 1990)); *Wheeler v. Hurdman*, 825 F.2d 257, 259 n. 5 (10th Cir. 1987) (in such instances, a court's reference to evidence outside the pleadings does not convert the motion to a Rule 56 motion.).

Additionally, The Court may consider a document outside the pleadings even in a Rule 12(b)(6) analysis if the document is (1) "mentioned in the complaint," (2) "central to [the] claims [at issue]," and (3) not challenged as inauthentic. *Toone v. Wells Fargo Bank, N.A.*, 716 F.3d 516, 521 (10th Cir. 2013).

Furthermore, the Dismissal and Notice of Rights letter specifically states the EEOC information relates only to filing suit "under federal law," and explains the "time limit for filing suit based on a claim under state law may be different." [*See* EEOC Dismissal and Notice of Rights, attached as **Exhibit B**.][4] Although the CCRD and EEOC operate under a work-sharing agreement, there is no indication the agreement impacts the CCRD ninety-day filing period. *Fleites*, 2008 U.S. Dist. LEXIS 81401 at *2; *see also Rodriguez v. Wet Ink, LLC*, 603 F.3d 810, 814 (10th Cir. 2010) ("It is implausible that the work-sharing agreement would be so careful to make the CCRD's resolution of charges advisory, yet allow the CCRD to bind discrimination complainants through the issuance of a right-to-sue notice."); *Robinson*, 2018 U.S. Dist. LEXIS 89047 *10 (dismissing plaintiff's CADA claims as untimely for failure to file within the ninety day deadline). Thus, the EEOC notice letter related only to the federal claims under federal statutes, not Smith's state claims.

Colorado law is clear that CADA claims are barred and a district court lacks jurisdiction if a lawsuit is not brought within ninety days. C.R.S. § 24-34-306(2)(b)(I)(C). Smith was required to file her state law CADA claims within ninety days of CCRD's May 2, 2019 notice letter. Smith did not timely file her Fifth and Seventh causes of action. Therefore, this Court should dismiss Plaintiff's CADA claims against ROP as time-barred.

---

[4]*See* footnote 3, *supra*.

## II.    ROP IS NOT ENGAGED IN ANY OF THE FOUR INDUSTRIES TO WHICH THE CMWO APPLIES; THEREFORE, PLAINTIFF'S NINTH CAUSE OF ACTION MUST BE DISMISSED

The Colorado Minimum Wage Order ("CMWO") only applies to employers and employees in four industries: (1) Retail and Service; (2) Commercial Support Service; (3) Food and Beverage; and (4) Health and Medical.  *See* Colorado Minimum Wage Order No. 35, 7 C.C.R. 1103–1:1(A)-(D); ***Bagoue v. Developmental Pathways***, 2019 U.S. Dist. LEXIS 162007 at *8, 2019 WL 4597869 at *8 (D. Colo. Sept. 23, 2019) ("The Wage Order 'regulates wages, hours, working conditions and procedures for certain employers and employees' in four 'industries': (A) Retail and Service; (B) Commercial Support Service; (C) Food and Beverage; [and] (D) Health and Medical.'"); ***Simmons v. Boys & Girls Club of the Pikes Peak Region***, 2017 U.S. Dist. LEXIS 160896 at *1 (D. Colo. Sept. 29, 2017) (dismissing plaintiff's complaint with prejudice where complaint did not allege defendant fell into any of these four covered industries); ***Etchieson v. Sykes Enters.***, 2017 U.S. Dist. LEXIS 39583 at *5, 2017 WL 1048275 at *5 (D. Colo. Mar. 20, 2017); ***Cartier v. W. Elec. Coordinating Council***, 2015 U.S. Dist. LEXIS 74375 at *13-14, 2015 WL 3581346 at *13-14 (D. Colo. June 9, 2015).  Here, Plaintiff's Complaint fails to allege ROP is engaged in any of the four enumerated industries and therefore her claim must fail as a matter of law.  ***Simmons***, 2017 U.S. Dist. LEXIS 160896  at *1.

In determining whether the Wage Order applies to a particular employer, "courts look to whether the employer's operations fit the industry definition, not whether any of the company's employees perform services that may be supplied in a particular industry." ***Bagoue***, 2019 U.S. Dist. LEXIS 162007, at *10 (citing ***Blanco v. Xtreme Drilling and Coil Servs., Inc.***,  2017 U.S. Dist. LEXIS 33755 at * 3, 2017 WL 951150, at *3 (D. Colo. Mar. 8, 2017)).

### A.      ROP is not in the Retail and Service Industry

The CMWO defines Retail and Service as:

[A]ny business or enterprise that sells or offers for sale, any service, commodity, article, good, real estate, wares, or merchandise to the consuming public, and that generates 50% or more of its annual dollar volume of business from such sales . . . It also includes amusement and recreation, public accommodations, banks, credit unions, savings and loans, and includes any employee who is engaged in the performance of work connected with or incidental to such business or enterprise, including office personnel.

7 Colo. Code Regs. 1103–1 (2)(A).  ROP does not provide any services to the "consuming public," – unlike each of the enterprises listed in the retail and service section provided in the regulation. As Plaintiff acknowledges, ROP contracted with the State of Colorado to provide services to clients.  (*See* Compl. at ¶¶ 186, 199, 201, 255).  A state agency is not included within the term "consuming public." ***Bagoue***, 2019 U.S. Dist. LEXIS 162007 at *18 (citing BLACK'S LAW DICTIONARY 335 (8th ed. 2004)) (defining "consumer" as "[a] person who buys goods or services for personal, family, or household use, with no intention of resale; a natural person who uses products for personal rather than business"); ***Menocal v. GEO Grp.***, 113 F. Supp. 3d 1125, 1131 (D. Colo. 2015) (finding defendant is not a "Retail and Service" employer under the CMWO because "'incarceration services' are completely unlike the other services given by example in the CMWO . . . and the meaning of "consuming public" does not include the federal government."). Accordingly, there is no factual basis to conclude ROP's revenue comes from sales to the consuming public (as opposed to its contracts with the State) and Plaintiff's claim cannot proceed under this provision.

### B.      ROP is not part of the Commercial Support Services Industry

The CMWO defines Commercial Support Services as:

> Commercial Support Service: any business or enterprise engaged directly or indirectly in providing services to other commercial firms through the use of service employees who perform duties such as: clerical, keypunching, janitorial, laundry or dry cleaning, security, building or plant maintenance, parking attendants, equipment operations, landscaping and grounds maintenance. Commercial support service also includes temporary help firms which provide employees to any business or enterprise covered by this Wage Order. Any employee, including office personnel, engaged in the performance of work connected with or incidental to such business or enterprise, is covered by the provisions of this Wage Order.

7 Colo. Code Regs. 1103–1:2(B).  "One aspect common to all of the jobs or services listed in the Wage Order's definition of Commercial Support Service is that the employees perform routine, everyday tasks that larger employers often farm out to other companies." *Blanco*, 2017 U.S. Dist. LEXIS 33755 at * 7 (citing *Cartier*, 2015 U.S. Dist. LEXIS 74375 (D. Colo. 2015) (noting all listed professions perform relatively low-skilled sorts of work that companies often farm out to vendors); *Etchieson*, 2017 U.S. Dist. LEXIS 39583 (D. Colo. 2017) (occupations listed in the definition share the common theme of relatively unskilled labor that companies frequently outsource).  In analyzing whether the CMWO applies to a particular employer, courts look to whether the employer's operations fit the industry definition, not whether any of the company's employees perform services that may be supplied in a particular industry.  *Id.* at *7-8.  Although ROP was under contract with the State, its employees were not performing relatively low skilled labor but were highly specialized with some positions requiring advanced certifications and master's degrees.  (Compl. ¶ 186).  Furthermore, ROP staff were frequently engaged in highly skilled activities such as providing "the students' updated schedules, updated transcripts, updated grade reports and in-school behavioral reports, Per Pupil Revenue reports, Key Performance Indicator reports, teacher evaluations, in-class observations, and compiling all necessary information for . . . Advanced Accreditation monitoring . . . ." (Compl. at ¶ 160).  Plaintiff's duties

9

also included teaching and proctoring examinations, which required licensure.  (Compl. ¶¶ 22, 98, 131, 291, 312, 327).  ROP also employed many education and therapeutic staff.  (Compl. at ¶¶ 33, 185, 199, 201-02, 224, 316, 320, 326).  Accordingly, Plaintiff's claim cannot proceed under this provision.

### C.    ROP is not in the Food and Beverage Industry

The Wage Order also applies to the Food and Beverage industry, defined as:

> Food and Beverage: any business or enterprise that prepares and offers for sale, food or beverages for consumption either on or off the premises. Such business or enterprise includes but is not limited to: restaurants, snack bars, drinking establishments, catering services, fast-food businesses, country clubs and any other business or establishment required to have a food or liquor license or permit, and includes any employee who is engaged in the performance of work connected with or incidental to such business or enterprise, including office personnel.

7 Colo. Code Regs. 1103–1:2(C).  Because this provision only applies to those businesses that prepare and offer food and beverages for sale directly to the consumer for the consumption either on or off premises, this provision is inapplicable to ROP and Plaintiff's CMWO claim cannot proceed on these grounds either.  *See Salazar v. Butterball LLC*, 2010 U.S. Dist. LEXIS 24252 *35, 2010 WL 965353 at *35 (CMWO applies only to those business that offer food for sale directly to the consumer); *Menocal*, 113 F. Supp. 3d at 1131 (finding defendant was not a "Food and Beverage" employer under the CMWO because defendant did not sell food to the consuming public and was unlike all the other examples given in the CMWO).

### D.    ROP is not in the Health and Medical Industry

The CMWO defines "Health and Medical" employers as:

> [A]ny business or enterprise engaged in providing medical, dental, surgical or other health services including but not  limited to medical and dental offices, hospitals, home health care, hospice care, nursing homes, and mental health centers, and

> includes any employee who is engaged in the performance of work connected with
> or incidental to such business or enterprise, including office personnel.

7 Colo. Code Regs. 1103–1:2(D).  ROP is not in the "Health and Medical" industry because ROP

does not provide medical, dental, surgical, or other health services.  Additionally, ROP is not a

hospital, home health care provider, hospice care provider, nursing home, or mental health center,

and does not provide any such service to its students.  Additionally, Plaintiff has not alleged ROP

is engaged in providing any of these services.  *Simmons*, 2017 U.S. Dist. LEXIS 160896 at *1

(dismissing plaintiff's complaint with prejudice where complaint did not allege defendant fell into

any of these four covered industries).  Furthermore, as the court in *Menocal* explained, this

definition should be read to reach only those businesses that provide health or medical services to

the general public.  113 F. Supp. 3d at 1130 (finding defendant was not a "Health and Medical"

employer under the CMWO because the CMWO requires that the business at issue offer services

in some capacity to the general public).  Because ROP does not provide any health or medical

services to the general public, and Plaintiff does not so allege, Plaintiff's claims cannot proceed

under this provision.  *Bagoue*, 2019 U.S. Dist. LEXIS 162007 at *10.

ROP is not engaged in any of the four enumerated industries and Plaintiff fails to allege

otherwise.  Accordingly, Plaintiff's claim under the CMWO must be dismissed.

## III.   PLAINTIFF'S FIRST CAUSE OF ACTION FOR SEX DISCRIMINATION / SEXUAL HARASSMENT SHOULD BE DISMISSED BECAUSE PLAINTIFF FAILED TO ALLEGE ANY DISCRETE DISCRIMINATORY ACTS OR HARRASSMENT WITHIN THE ACTIONABLE TIME PERIOD

Under Title VII of the Civil Rights Act of 1964, in a state with an entity authorized to grant

or seek relief with respect to an alleged unlawful employment practice, an employee who initially

files a grievance with the state agency must file a charge with the EEOC within 300 days of the

employment practice.  42 U.S.C. § 2000e-5(e)(1); *see also **Nat'l R.R. Passenger Corp. v. Morgan***, 536 U.S. 101 (2002); ***Zipes v. TransWorld Airlines, Inc.***, 455 U.S. 385, 394 (1982) (because Title VII seeks to avoid "the pressing of stale claims," it requires aggrieved persons to file any such charge within certain specified periods after the allegedly unlawful conduct occurred).  If an employee does not submit a timely EEOC charge, he or she may not proceed to court.  ***Ledbetter v. Goodyear Tire***, 127 S. Ct. at 2166-67, 550 U.S. 618 (2007).  While the applicable deadline for filing a charge with the EEOC depends on a variety of circumstances, the latest possible filing date is 300 days after the last allegedly unlawful act.  ***Montes v. Vail Clinic, Inc.***, 497 F.3d 1160 (10th Cir. 2007); ***Duncan v. Manager, Dep't of Safety, City and Cnty. of Denver***, 397 F.3d 1300, 1308 (10th Cir. 2005) ("Title VII is not intended to allow employees to dredge up old grievances; they must promptly report and take action on discriminatory acts when they occur. Unlitigated bygones are bygones.").

Furthermore, if a would-be plaintiff believes that an employer has chosen not to hire her, or chosen to fire her, or otherwise discriminated against her "with respect to [her] compensation, terms, conditions, or privileges of employment" on account of a protected characteristic (such as sex), she must file a separate discrimination charge with the EEOC within 300 days of each such act, ***Morgan***, 536 U.S. at 110-15. Any discrete discriminatory act more than 300 days old at the time the charge is filed is "untimely filed and no longer actionable."  ***Id.*** at 113-15.

Because Plaintiff filed her EEOC complaint on June 7, 2018 (Compl. at ¶ 191), the last unlawful act cognizable by law must have occurred on or after August 11, 2017.[5] Here, all of the alleged sex discrimination and harassment set forth in Plaintiff's Complaint occurred more than

---

[5] From August 11, 2017 to June 7, 2018, is the "Actionable Time Period."

300 days before Plaintiff filed her charge of discrimination with the EEOC (pre-August 11, 2017), and thus, outside Plaintiff's Actionable Time Period.  (*See* Compl. at ¶¶ 7-156).  Because these acts occurred outside of the Actionable Time Period, they cannot provide the basis of Plaintiff's claims against ROP.

A. **The Discrete Acts Alleged by Plaintiff in Support of her Sex Discrimination / Sexual Harassment Claim Occurred Outside the Actionable Time Period**

First, discrete discriminatory and retaliatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges. *Morgan*, 536 U.S. at 110-15.  Because each discrete act starts a new clock for filing charges alleging that act, the charge must be filed within the 300-day period after the act occurred.  *Id.*; *Haynes v. Level 3 Commc'ns, LLC*, 456 F.3d 1215, 1222 (10th Cir. 2006).  The existence of past acts and the employee's prior knowledge of their occurrence, however, do not bar employees from filing charges about related discrete acts so long as the acts are independently discriminatory and charges addressing those acts are themselves timely filed. *Morgan*, 536 U.S. at 110-15; *Brown v. Unified Sch. Dist. 501, Topeka*, 465 F.3d 1184, 1186 (10th Cir. 2006).  While Plaintiff alleges she suffered from numerous discriminatory and retaliatory acts from the date she was hired through the date she resigned, only those acts that occurred within the applicable 300-day filing period are actionable. *Morgan*, 536 U.S. at 110-15.  All prior discrete discriminatory acts are untimely filed and no longer actionable. *Morgan*, 536 U.S. at 110-15 (citing *United Air Lines, Inc. v. Evans*, 431 U.S. 553 (1977) ("This Court has also held that discrete acts that fall within the statutory time period do not make timely acts that fall outside the time period.")).

Similarly, a plaintiff must exhaust his or her administrative remedies before pursuing Title VII claims in federal court.  *See Khader v. Aspin*, 1 F.3d 968, 970 (10th Cir. 1993); *Laughter v.*

*Gallup Indian Med. Ctr.*, 425 Fed. App'x. 683, 688 (10th Cir. 2011).  To exhaust administrative remedies, an individual claimant must: (i) timely file a charge of discrimination with the EEOC setting forth the facts and nature of the charge; and (ii) receive notice of the right to sue.  *See Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir. 1999).  "[A] plaintiff normally may not bring a[n] . . . action based upon claims that were not part of a timely-filed EEOC charge for which the plaintiff has received a right-to-sue letter."  *Id.* at 1321.

Importantly, not only are acts that occurred *before* the Actionable Time Period time-barred, but also, every alleged act occurring *after* June 7, 2018, are also time-barred.  Because Plaintiff only filed a single charge with the CCRD and EEOC, Plaintiff has necessarily failed to exhaust her administrative remedies for any discrete act occurring from the date she filed her Charge of Discrimination, June 7, 2018, until her resignation on August 2, 2018.  This time period includes all conduct alleged in ¶¶ 192-290 of Plaintiff's Complaint.  (*See* Compl. ¶¶ 192-290).

Careful review of Plaintiff's Complaint in fact reveals no plausible or sufficiently specific allegation of any discrete discriminatory act occurring within the Actionable Time Period.  (*See generally* Compl. ¶¶ 157-191).  Looking to Plaintiff's Complaint, the only alleged discriminatory or retaliatory act Plaintiff alleges that arguably falls within the Actionable Time Period is: "After the investigation, Defendant Martinez harassed Plaintiff on a daily basis.  Defendant Martinez not only retaliated against Plaintiff in private, but he had begun to do so in front of staff and students."  (Compl. at ¶ 158).  This allegation provides no specific facts and does not actually provide any dates to determine if the alleged conduct was indeed within the Actionable Time Period.  This single allegation of apparently non-time-barred conduct is conclusory in nature and fails to identify

14

any harassing, discriminatory, or retaliatory conduct with the specificity required under *Iqbal*, *Twombly*, or their progeny.  *See e.g., Twombly*, 550 U.S. at 555 ("The court does not accept as true a legal conclusion couched as a factual allegation."); *Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (a court "should disregard all conclusory statements of law and consider whether the remaining specific factual allegations, if assumed to be true, plausibly suggest the defendant is liable."); *Iqbal*, 556 U.S. at 678.  Plaintiff offers no specific allegation to support her bald and conclusory claims; and details no specific incidents or dates.

Importantly, this allegation does not even claim the harassment or retaliation was based on Plaintiff's sex.  (Compl. at ¶ 158).  Indeed, when read in context, this allegation appears to be directed toward Martinez's alleged retaliatory conduct (i.e., Plaintiff was harassed not based upon her sex but in retaliation for filing her EEOC charge).  Plaintiff also alleges she "reported incidents of Defendant Martinez's retaliation to Ms. Sampson on October 24, 2017, October 30, 2017, December 13, 2017 and December 15, 2017."  (Compl. at ¶ 159).  Although retaliation and harassment frequently occur in tandem, they are addressed under distinct and nonoverlapping doctrinal frameworks.  The retaliation inquiry focuses on the individual's conduct in opposing discrimination, while the harassment inquiry focuses on whether an individual was targeted for discrimination on the basis of her membership in a protected class.  Because each claim involves a distinct inquiry, Plaintiff's allegation of retaliation in ¶ 159 of her Complaint should not be presumed to include allegations of harassment based on sex.  Furthermore, there seems to be a clear demarcation in Plaintiff's Complaint as to when the alleged harassment ended and the alleged retaliation began; namely, ROP's disciplining of Martinez on July 13, 2017 – which occurred a month before the start of the Actionable Time Period (August 11, 2017).  (Compl. at ¶¶ 142, 150.)

Indeed, taking Plaintiff's allegations as true, after Plaintiff complained about Martinez's alleged sexual harassment and HR conducted its investigation, Martinez' office was moved to a separate building (Compl. at ¶¶ 146, 155), he was suspended (Compl. at ¶ 117), and Plaintiff began reporting to Ms. Sampson rather than Martinez (Compl. at ¶ 147).

Because Plaintiff fails to allege with specificity any discrete discriminatory conduct occurring within the Actionable Time Period, Plaintiff's First Cause of Action for Sex Discrimination/Sexual Harassment should be dismissed.

      **B.**      **To the Extent Plaintiff's Harassment Claim is Intended as a Hostile Work Environment Claim (HWE), Plaintiff's HWE Claim Also Fails Because ROP's Actions do not Constitute a Continuing Violation and Martinez's Alleged Harassment Occurred Outside the Actionable Time Period**

Hostile work environment claims are different in kind from discrete acts. Because their very nature involves repeated conduct, the "unlawful employment practice," § 2000e-5(e)(1), cannot be said to occur on any particular day. It occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own. *See Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993); *Morgan*, 536 U.S. at 117; *see also Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 66-67 (1986) (sexual harassment amounts to sex discrimination under Title VII if sufficiently severe or pervasive such that it creates a sexually hostile environment).

Determining whether an actionable hostile environment claim exists requires an examination of all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. *Harris*, 510 U.S. at 23. The question whether a court may, for purposes of determining liability, review all such conduct,

including those acts that occur outside the filing period, turns on the statutory requirement that a charge be filed within a certain number of days "after the alleged unlawful employment practice occurred." *Ledbetter*, 127 S. Ct. at 2166-67. Because such a claim is composed of a series of separate acts that collectively constitute one "unlawful employment practice," it does not matter that some of the component acts fall outside the statutory time period, "*[p]rovided that an act contributing to the claim occurs within the filing period.*" *Morgan*, 536 U.S. at 117 (emphasis added); *Hansen v. SkyWest Airlines*, 844 F.3d 914, 922 (10th Cir. 2016); *Herrera v. Int'l Broth., Local 68*, 228 F. Supp. 2d 1233, 1241 (D. Colo. 2002) ("In other words, a "charge alleging a hostile work environment claim . . . will not be time barred so long as all acts which constitute the claim are part of the same unlawful employment practice and at least one act falls within the time period."). Again, as discussed above, Plaintiff fails to allege a single act of harassment occurred within the Actionable Time Period. (*See* Compl. ¶¶ 157-191). Plaintiff details several alleged acts of harassment committed by Martinez, the last of which occurred in early July 2017. (Compl. ¶¶ 12-96). She does not allege any specific act of sexual harassment occurred between August 11, 2017 and June 7, 2018. (*See* Compl. ¶¶ 158-191). Instead, Plaintiff alleges, after the investigation into Martinez's conduct, Martinez continued to harass her "on a daily basis." (Compl. ¶ 158). Plaintiff, however, offers no facts to support her bald and conclusory statement; and provides no specific incidents or dates. As described above, this type of allegation is insufficient to maintain a claim. *See Twombly*, 550 U.S. at 555 ("The court does not accept as true a legal conclusion couched as a factual allegation."). Because Plaintiff fails to allege sufficient acts of sexual harassment within the Actionable Time Period, her First Cause of Action against ROP should be dismissed.

Furthermore, acts alleged to have occurred during the Actionable Time Period (between August 11, 2017 and June 7, 2018), are not sufficient by themselves to cement Plaintiff's hostile work environment claims because none of these alleged acts were based on Plaintiff's sex.  (*See generally* Compl. ¶¶ 157-191).  Also, the alleged acts occurring within the Actionable Time Period do not have a sufficient "relationship" to the acts occurring outside the 300-day period so as to be part of the "same hostile work environment."  ***Duncan***, 397 F.3d at 1308.  To determine whether these acts are part of the same unlawful employment practice, ***Morgan*** advises looking at the type of acts, the frequency of the acts, and the perpetrator of the acts.  ***Id.*** (citing ***Morgan***, 536 U.S. at 120).  ***Morgan*** explains that when analyzing a hostile work environment claim spanning longer than 300 days "[a] court's task is to determine whether the acts about which an employee complains are part of the same actionable hostile work environment practice, and if so, whether any act falls within the statutory time period."  ***Id.*** at 1308-09.  ***Morgan*** emphasized there must be a relationship between acts alleged after the beginning of the filing period and the acts alleged before the filing period: "if an act on day 401 had no relation to the acts between days 1-100, or for some other reason, such as certain intervening action by the employer, was no longer part of the same hostile environment claim, then the employee cannot recover for the previous acts, at least not by reference to the day 401 act."  ***Id.*** (citing ***Morgan***, 536 U.S. at 118).  The ***Duncan*** panel further summarized the application of ***Morgan*** as follows: "***Morgan*** holds that a series of alleged events comprises the same hostile environment where "the pre-and post-limitations period incidents involve[d] the same type of employment actions, occurred relatively frequently, and were perpetrated by the same managers."  ***Id.*** at 1309 (citing ***Morgan***, 536 U.S. at 120).

Applying this standard, no court could rationally conclude that the acts Plaintiff alleges outside the Actionable Time Period are part of the same employment practice as the acts Plaintiff alleges within the Actionable Time Period (when Martinez was already disciplined and taken out of Plaintiff's chain of command).  The acts alleged within the Actionable Time Period are about her disagreement with the HR investigation results, her annual review, and the numerous disagreements with her various supervisors.  (*See* Compl. ¶¶ 157-191).  The acts alleged about Martinez, which are the only allegedly sexually hostile acts, all occurred before the Actionable Time Period, and are distinctly different employment practices.  (*See* Compl. ¶¶ 12-96).

In ***Adler v. Wal-Mart Stores, Inc.****,* the Court explained that an employer's liability for allowing a sexually hostile work environment after it is reported to the employer by the employee arises only if the employer fails to take adequate remedial and preventative responses to any actually or constructively known harassment.  144 F.3d 664, 673 (10th Cir. 1998).  A court may determine whether an employer's responses to claims of sexual harassment were reasonable as a matter of law.  ***Scarberry v. ExxonMobil Oil Corp.***, 328 F.3d 1255, 1257 (10th Cir. 2003).  As Plaintiff alleges, after Plaintiff complained, Martinez's office was moved to a separate building (Compl. at ¶¶ 146, 155), he was suspended (Compl. at ¶ 117), and Plaintiff began reporting to Ms. Sampson rather than Martinez (Compl. at ¶ 147).  Taking Plaintiff's allegations as true, ROP took immediate, adequate, remedial and preventative responses to the conduct alleged by Plaintiff.  Thus, alternative grounds for dismissal of Plaintiff's First Cause of Action exist even if the Court finds that the legal conclusion in ¶ 158 of Plaintiff's Complaint alone, is enough to support Plaintiff's HWE claim.  ROP took adequate remedial and preventative measures to address Martinez's conduct as soon as it was reported.  Based on Plaintiff's own admissions that ROP

acted in this remedial manner to immediately stop Martinez's allegedly unlawful conduct, there is

no liability for ROP in allowing a sexually hostile work environment.  *See Adler*, 144 F.3d at 673.

IV.    **PLAINTIFF'S SECOND CAUSE OF ACTION FOR RETALIATION SHOULD BE DISMISSED BECAUSE PLAINTIFF CANNOT ESTABLISH ANY CAUSAL CONNECTION BETWEEN HER PROTECTED ACTIVITY AND THE ALLEGED ADVERSE EMPLOYMENT ACTIONS**

To establish a *prima facie* case of retaliation, Plaintiff must establish: (1) she engaged in

protected opposition to Title VII discrimination or participated in a Title VII proceeding; (2) she

suffered an adverse employment action contemporaneous with or subsequent to such opposition

or participation; and (3) there is a causal connection between the protected activity and the adverse

employment action. ***Daniel v. Loveridge***, 32 F.3d 1472, 1475 (10th Cir. 1994); ***Burrus v. United***

***Tel. Co. of Kansas***, 683 F.2d 339, 343 (10th Cir.), *cert. denied*, 459 U.S. 1071 (1982).

Taking Plaintiff's non-conclusory, fact-based allegations as true, Plaintiff cannot establish

the third element of her retaliation claim.  Plaintiff alleges four acts in support of her Second Cause

of Action: (1) ROP failed to promote her; (2) ROP failed to give her a promised bonus; (3) ROP

gave her a negative performance review that negatively impacted her merit pay increase; and (4)

ROP demoted her to a position that paid $4.00 per hour less.  (Compl. at ¶ 344).  With each of

these alleged acts, however, Plaintiff cannot overcome the objective, legitimate, non-retaliatory

reason for the decision.

A.     **Plaintiff was Not Promoted Because the Position was Never Filled and Plaintiff Was Not Qualified**

First, ROP's decision not to promote Plaintiff, by her own allegations, was due to ROP

deciding not to fill the position and because Plaintiff was not qualified.  (Compl. at ¶¶ 177-79,

186).

Plaintiff applied for the Instructional Team Lead ("ITL") Position formerly held by Martinez. (*Id.* at ¶ 177). Ms. Madden, ROP Program Director, returned Plaintiff's application and stated the job had not yet been posted. (*Id.* at ¶ 178, 316). "Ms. Madden sent an email stating [ROP] had decided not to hire for the position." (*Id.* at ¶ 179). Instead, Ms. Madden and Mr. Molineux, an ROP employee, would perform Martinez' supervisory duties. (*Id.*) Additionally, Plaintiff acknowledges HR informed her she did not have the expertise to perform Martinez' job duties and that HR had not made an effort to fill Martinez's position after he resigned. (*Id. at ¶* 185). Plaintiff further acknowledges William Wood, the Regional Director, informed Plaintiff that, per ROP's state contract, the position needed to be filled by someone with a master's degree in special education. (*Id.* at ¶ 186). Plaintiff does not have a master's degree of any kind. Moreover, although Plaintiff claims Mr. Wood indicated the position was to be filled upon Mr. Molineux's departure, Mr. Molineux never departed. (*Id.*)

Because it is undisputed that Plaintiff did not have the requisite education to be promoted to the ITL position, the position was not posted at the time Plaintiff applied, and the position was never filled but rather the duties of the position were split between existing employees Molineux and Madden, taking Plaintiff's non-conclusory allegations as true, Plaintiff cannot establish ROP's decision not to promote her was causally connected to any of her alleged protected complaints. ***Kendrick v. Penske Transp. Servs., Inc.***, 220 F.3d 1220, 1226 (10th Cir. 2000) (a plaintiff alleging a failure-to-promote claim must initially establish a *prima facie* case, demonstrating that: (1) she was a member of a protected class; (2) she applied for and was qualified for the position; (3) despite being qualified she was rejected; and (4) after she was rejected, the position was filled.). Plaintiff's

own allegations destroy her failure-to-promote claim.  She was not qualified (required by elements two and three), and the position was never filled (required for element four).

    **B.**    **Plaintiff Cannot Establish Temporal Proximity Between ROP's Failure to Pay a Bonus and Any Alleged Protected Conduct**

Next, Plaintiff claims ROP failed to give her a promised bonus.  The only bonus mentioned in Plaintiff's Complaint concerns a bonus she was allegedly promised in an interaction with Ms. Sampson on August 22, 2017, wherein Ms. Sampson allegedly indicated "that she needed Plaintiff to complete the work because Defendant Martinez had not done so and that she would ensure that Plaintiff received a $500 bonus."  (Compl. at ¶ 302).  Plaintiff further alleges she "never received the bonus and was never paid for the overtime."  (*Id.*)  Importantly, Plaintiff does not allege any temporal connection or causal connection between ROP's failure to pay this bonus and any protected conduct.  (*Id.)*

Additionally, Plaintiff's timeline for retaliation is not supported by the facts.  Plaintiff's first complaint about Martinez was in July 2017.  (Compl. ¶ 109).  According to Plaintiff, Ms. Sampson did not promise Plaintiff a bonus until August 22, 2017, *after* she had already engaged in the alleged protected conduct.  (Compl. ¶ 301).  Accordingly, it is nonsensical that ROP would promise to pay a bonus and then intentionally not pay the bonus in retaliation for something Plaintiff did before the promise to pay the bonus was made in the first place.

ROP's alleged failure to pay Plaintiff a bonus cannot be retaliation for her EEOC complaint either.  Plaintiff's EEOC complaint was made more than ten months *after* ROP alleged failed to pay Plaintiff's bonus.  (Compl. ¶ 191).

Even taking Plaintiff's allegations as true, Plaintiff cannot demonstrate the failure to pay her a $500 bonus allegedly promised to her on August 22, 2017, was in retaliation for any of her protected complaints about sexual harassment or discrimination.

Lastly, failure to pay a bonus is a discrete employment action requiring Plaintiff to file an EEOC charge before filing a civil action alleging retaliation based on this incident. *Martinez v. Potter*, 347 F.3d 1208, 1210 (10th Cir. 2003) (citing *Morgan*, 536 U.S. at 110-13).  In her Charge, Plaintiff's only allegations of retaliation are increased work duties, failure to promote, and a negative performance evaluation resulting in loss of merit pay increase.  (Compl. ¶ 191). [*See* Charge of Discrimination, attached as **Exhibit C**.][6]  Accordingly, she has failed to exhaust her administrative remedies related to ROP's failure to pay a bonus.

### C.     Despite Plaintiff's Allegation that ROP Gave Her a Negative Performance Review That Negatively Impacted Her Merit Pay Increase, Plaintiff's Performance Review was Favorable and She Received a Merit Pay Increase

Plaintiff claims she received a performance review that negatively affected her merit pay increase. (Compl. at ¶ 344).  Plaintiff's assertion is false.  [*See* Employee Performance Review (EPR), 4/26/2018, **Exhibit D**].[7]  Out of the eighteen review categories contained in the performance review, Plaintiff received one rating of "satisfactory, usually meets expectations," fifteen ratings of "commendable, frequently exceeds expectations," and two ratings of "outstanding, consistently exceeds expectations," with an overall rating of "commendable, frequently exceeds expectations."  (*See* Exhibit D).  There was not a single rating of needs improvement or unsatisfactory, and the overall comments were positive:

---

[6] *See* footnote 3, *supra*.

[7] *See* footnote 3, *supra*.

> Ms. Smith was effective in communicating with students and staff at Betty Marler. Ms. Smith constantly searches for new ideas and ways to improve efficiency, handles customer service situations well and she is organized and efficient. Additionally, Ms. Smith received favorable and complementary feedback from client managers about her dedication to Betty K. Marler and the girls we serve here.

As a result of the evaluation, Plaintiff received a merit increase of 4%, the second highest amount possible. Furthermore, the raise was made retroactive to March 1, 2018. (Compl. at ¶ 182). Plaintiff offers no basis for this Court to conclude that a satisfactory evaluation is in fact a negative or unfavorable evaluation constituting an adverse employment action. *Meredith v. Beech Aircraft Corp.*, 18 F.3d 890 (10th Cir. 1994) (former employee's performance evaluation, conducted after she filed sex discrimination complaint, was not "adverse action"; former employee failed to establish a *prima facie* case of retaliation under Title VII because her evaluation marks were satisfactory and she failed to show that they were unfavorable); *see also Smart v. Ball State Univ.*, 89 F.3d 437, 442 (7th Cir. 1996) (citing *Meredith*, 18 F.3d at 896); *Hollins v. Atl. Co., Inc*., 188 F.3d 652, 662 (6th Cir. 1999) (holding that "[s]atisfactory ratings in an overall evaluation will not constitute an adverse employment action where the employee receives a merit raise.").

Moreover, the fact Plaintiff believes she deserved a better evaluation, or a larger pay increase is of no moment. Plaintiff may not petition this Court for a better evaluation or a larger raise. *Jones v. Denver Post Corp.*, 203 F.3d 748, 754 (10th Cir. 2000) ("It is the manager's perception of the employee's performance that is relevant, not plaintiff's subjective evaluation of his own relative performance.") (citing *Furr v. Seagate Tech., Inc.*, 82 F.3d 980, 988 (10th Cir. 1996)); *Simms*, 165 F.3d at 1330 (Title VII charges neither this Court nor the jury to act as a "'super personnel department' that second guesses employers' business judgments.").

### D.      Plaintiff Was Not Demoted

A demotion is a discrete retaliatory act that requires Plaintiff to file a charge with the EEOC before bringing an action in civil litigation.  *Martinez*, 347 F.3d at 1210 (citing *Morgan*, 536 U.S. at 110-13).  In her Charge, Plaintiff's only allegations of retaliation are increased work duties, failure to promote, and a negative performance evaluation resulting in loss of merit pay increase. (Compl. ¶ 191; *see also* Exhibit C).  Accordingly, she has failed to exhaust her administrative remedies related to any alleged demotion.  *See Daneshvar v. Graphic*, 237 Fed. Appx. 309, 313 (10th Cir. 2007) ("suspension and discharge were separate, discrete incidents, and that each required exhaustion"); *Almond v. Unified Sch. Dist. No. 501*, 665 F.3d 1174, 1178 (10th Cir. 2011) (holding that discrete acts such as demotion, "trigger the statute of limitations when announced to the claimant . . . .").

Next, to establish a *prima facie* case of retaliatory demotion, Plaintiff must show, *inter alia*, she was qualified for the position at issue.  *Hooks v. Diamond Crystal Specialty Foods, Inc.*, 997 F.2d 793, 799 (10th Cir. 1993) (overruled on other grounds).  Based on her own allegations, the facts are clear that she was not qualified for her prior position (because her violation of ROP policy and the States' insistence she not return rendered her unqualified for continued employment, as more fully described below) and therefore her transfer to Ridge View Academy was mandated by the State, and was not, as she alleges, a demotion by ROP.

Although Plaintiff does not allege her suspension was retaliatory, her suspension and the State's takeover of BKMYSC were part and parcel of the decision to transfer Plaintiff to Ridge View Academy, a decision Plaintiff alleges as a retaliatory demotion.  (Compl. at ¶ 344).

The decision to transfer Plaintiff to another facility was not made by ROP. As Plaintiff acknowledges and alleges in her Complaint, on July 16, 2018, BKMYSC was taken over by the State of Colorado. (Compl. at ¶ 193). State officials entered the campus and escorted all employees off campus. (*Id.*) The State had taken over the facility and the employees were not allowed back until further notice. (*Id.* at ¶ 194). On July 17, 2018, BKMYSC staff met at Ridge View Academy and were informed the contract with the State had been revoked, but there was a possibility that education and treatment services would be continued. (*Id.* at ¶ 199). Ms. Sampson also stated that staff was not allowed to speak with BKMYSC youth. (*Id.* at ¶ 200). On July 20, 2018, Plaintiff received a call from a student who Plaintiff had been working with on transitioning employment and spoke with the student even after Ms. Sampson had directed staff not to have any such contact. (*Id.* at ¶ 215). Despite Ms. Sampson's admonition, Plaintiff continued to have repeated contact with the youth under the auspices of assisting the youth with tasks related to college and job transition. (*Id.* at ¶¶ 200, 216-23, 225-28). Mr. Winston, Mount View Next Step Teacher, informed Plaintiff that he had been working with the youth on her college courses and further advised Plaintiff the youth was not permitted to have unmonitored use of a computer. (*Id.* at ¶ 231).

After Plaintiff's contacts with the youth were discovered, Val, the interim Program Director, informed Plaintiff that she was to be escorted off campus because she had contacted a youth in violation of ROP policy and contrary to Ms. Sampson's instructions. (*Id.* at ¶ 238). Mr. Moe also explained to Plaintiff that she had been placed on leave due to her contact with a student while off-duty in violation of ROP policy and that Plaintiff was under investigative suspension. (*Id.* at ¶¶ 242, 250). Mr. Moe further stated, until the investigation was closed, Plaintiff was not

permitted to return to work.  (*Id.* at ¶ 244).  Mr. Wright stated that he and Mr. Moe had to work

with the State to investigate and make a determination.  (*Id.*at ¶ 250).  Mr. Wright stated that if it

was determined that Plaintiff had violated State policy, he and Mr. Moe would have to decide on

the appropriate course of action.  (*Id.*)

On July 31, 2018, Ms. Doyle stated that Plaintiff was no longer on investigative suspension;

however, Plaintiff was not allowed to return to BKMYSC ***per the State's request***.  (*Id*. at ¶ 253).

Ms. Doyle stated Plaintiff could work at Ridge View Academy as a Coach Counselor at the rate

of $12 per hour and that Plaintiff was not qualified for any other open positions with ROP.  (*Id.*)

Ms. Doyle stated Plaintiff was not allowed to return to position at BKMYSC per the State's request

and "***there was nothing Rite of Passage could do about it***."  (*Id.* at ¶ 253).  Ms. Doyle further

stated, "the contract with the State was very thin so ***Rite of Passage had to abide by what [the***

***State] said***."  Plaintiff stated that she understood.  (*Id.* at ¶ 255).  Ms. Doyle further stated Plaintiff

was still under investigation and that Plaintiff was being offered a position at Ridge View while

the investigation was completed.  (*Id.* at ¶ 261).

Importantly, Plaintiff nowhere alleges the reason provided for her transfer to Ridge View

was false or pretextual or that the State did not actually bar her from returning to BKMYSC.  (*See*

*generally* Compl.)

Additionally, two other employees had been banned from BKMYSC due to the State take

over and investigation, several employees were transferred to Ridge View as a result of the State

takeover, while still other staff were in the process of transferring to Ridge View.  (*Id.* at ¶¶ 268,

275).

Based on the forgoing allegations, taken as true, Plaintiff cannot establish any causal connection between her protected activities and any of the four alleged adverse employment actions upon which she bases her Second Cause of Action.  Importantly, Plaintiff also failed to exhaust her administrative remedies related to two of the four alleged adverse actions – failure to pay a bonus and demotion.

## V.     PLAINTIFF'S THIRD AND FOURTH CAUSES OF ACTION UNDER THE FLSA FOR OVERTIME PAY AND MINIMUM WAGE ARE BARRED BY THE STATUTE OF LIMITATIONS AND ALL REMAINING ALLEGATIONS ARE INSUFFICIENT TO STATE A CLAIM

If a party violates the FLSA, but such violation is not willful, the statute of limitations is two years.  If, however, the violation is willful, the statute of limitations is three years.  29 U.S.C. § 255 (1999); *Hernandez v. Ray Domenico Farms, Inc.*, 250 F. Supp. 3d 789, 792-93 (D. Colo. 2017) ("[a]ny action . . . to enforce any cause of action for unpaid minimum wages, unpaid overtime compensation, or liquidated damages, under the Fair Labor Standards Act . . . shall be forever barred unless commenced within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued").

To prove a willful violation, a party must show the employer "knew or showed reckless disregard for the matter of whether its conduct was prohibited by the FLSA."  *Reich v. Monfort, Inc.*, 144 F.3d 1329, 1334 (10th Cir. 1998).  If an employer acts reasonably in determining its legal obligation under the FLSA, its action cannot be deemed willful for purposes of the three-year limitations period.  *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128 (1988).  The burden is on the party alleging willfulness to prove that the actions taken were knowing or in reckless disregard of the FLSA.  *See Gilligan v. City of Emporia, Kansas*, 986 F.2d 410 (10th Cir. 1993).

Here, the two-year statute of limitations applies because Plaintiff has failed to allege ROP knew or showed reckless disregard as to whether their treatment of her was prohibited by the FLSA.  Indeed, the opposite is true.  For example, Jamie Glick, Ridge View's Clinical Director, overheard Plaintiff claiming she worked on student schedules and transcripts from home.  (Compl. ¶ 292).  Ms. Glick "interjected that Plaintiff did not have to complete the work from home and that it was against protocol to work off the clock." (*Id.* at ¶ 294).  Plaintiff alleges she covered the weekly clinical meetings but also admits she included "the hour on her time sheet because other employees were getting paid to be there." (*Id.* at  ¶ 308).  That Plaintiff was paid to be at the meeting is bolstered by Plaintiff's allegation that she received a call from Ms. Doyle in November 2017 informing Plaintiff that "she had to clock out for lunch," meaning she had been on the clock and compensated for the work performed during previous lunch hours.  (*Id.* at ¶ 309).  Plaintiff also states she was scared to report all of her hours because she had been warned about "excessive overtime," meaning (1) Plaintiff had been compensated to the point where it necessitated a warning about her "excessive overtime" and (2) Plaintiff's failure to report her hours necessarily means ROP was not aware of this time worked.  (*Id.* at ¶ 317).  Plaintiff also suggests Ms. Doyle offered her "back pay" for work as a substitute teacher, even though Plaintiff does not allege her substitute teacher work went unpaid.  (*Id.* at ¶ 314).  Additionally, "Mr. Wood was very upset that Plaintiff had been working off the clock and informed Plaintiff that she needed to be clocked in for all of her working hours and paid for her work.  Mr. Wood consistently checked in following that to ensure Plaintiff was clocking in appropriately." (*Id.* at ¶ 318).  Mr. Wood was adamant Plaintiff be paid for all hours worked.  (*Id.* at ¶ 319).  Furthermore, Ms. Doyle repeatedly warned Plaintiff not to exceed 40 hours per week.  (*Id.* at ¶¶ 321-23).  "Despite the serious staff shortage at

BKMYSC, it was expected by Ms. Doyle that staff not have overtime but complete the work." (*Id.* at ¶ 330).

Here, where Plaintiff received repeated warnings and instruction from ROP not to work overtime, not to work from home, and not to work off the clock, ROP cannot be found to have recklessly disregarded the mandates of the FLSA and the two-year statute of limitations should apply.

Applying the two-year limitations period, all of Plaintiff's claims for alleged unpaid wages accruing before October 15, 2017,[8] are time-barred. Plaintiff can only assert her FLSA claims for the uncompensated time she allegedly worked starting on October 15, 2017, until the time of her resignation on August 2, 2018. (*Id.* at ¶¶ 285-88). Nearly all of Plaintiff's claimed unpaid wages, however, are for the days and months prior to October 15, 2017. (*Id.* at ¶¶ 291-308).

Plaintiff alleges: she worked from home in April 2017 (*Id.* at ¶ 292); worked after hours on the graduation August 8, 2017 (*Id.* at ¶ 297); and worked other, unspecified, overtime in August 2017 (*Id.* at ¶¶ 297-303). Plaintiff's claims for wages based these allegations are barred by the statute of limitations.

What few conclusory statements remain alleging overtime or unpaid hours Plaintiff worked between October 15, 2017 and August 2, 2018, wholly fail to comport with federal pleading standards. Vague or conclusory allegations will not suffice to state a claim because it violates the pleading standards of Rule 8 of the Federal Rules of Civil Procedure as it does not provide fair notice to ROP. *See **Iqbal**,* 556 U.S. at 678; ***Twombly**,* 550 U.S. at 555.

---

[8] Plaintiff filed her Complaint on October 15, 2019.

Plaintiff's Complaint fails to address the predicate issue in that she fails to identify the existence of ROP's liability, i.e., that she performed work for which she was improperly compensated. Plaintiff alleges she was repeatedly asked by Ms. Sampson and Mr. Martinez not to report her overtime hours (Compl. at ¶ 316); however, Plaintiff never alleges she followed those instructions. (*See generally* Compl.). Instead Plaintiff's allegations suggest she was on the clock and compensated for her overtime to the chagrin of Ms. Doyle who repeatedly excoriated Plaintiff about her unauthorized excessive hours. (*Id.* at ¶¶ 309, 317, 319, 321-24, 329-31). Plaintiff was repeatedly warned about her excessive overtime – a fact that suggests she was regularly and adequately compensated for her work hours. Plaintiff also alleges she did not take time off for lunch to attend clinical meetings and was on the clock for these meetings. (*Id.* at ¶¶ 308, 309, 311). Additionally, when Ms. Doyle performed a wage and hour audit, she discovered Plaintiff could not demonstrate she actually worked the hours claimed. (*Id.* at ¶ 315).

Furthermore, Plaintiff alleges an FLSA minimum wage claim but does not allege any facts to support it. (*See generally id*). Curiously, Plaintiff recites the exact same allegations in support of her FLSA overtime claim, her FLSA minimum wage claim, and her CMWO claim. (*See* Compl. at ¶¶ 351, 358, 390). Moreover, Plaintiff never claims that her hourly rate fell below the state or federal minimum wage on any occasion. (*See generally id*). Instead, Plaintiff acknowledges ROP paid her $16.00 per hour. (*Id.* at ¶¶ 253, 254, 255, 285, 344, 378) (Plaintiff was offered $12.00 per hour (which she rejected), which was $4.00 per hour less than her then hourly rate.)). At the

time of Plaintiff's employment, the State minimum wage was $9.30 per hour in 2017 and $10.20 per hour in 2018.[9]  The federal minimum wage was $7.25 in 2017 and 2018.[10]

Based on Plaintiff's complete failure to identify with specificity or facts, any hours she worked that were uncompensated in violation of the FLSA, and not otherwise time-barred, ROP asks this Court to dismiss Plaintiff's Third and Fourth Causes of Action pursuant to Fed. R. Civ. P. 12(b)(6).   In the alternative to a complete dismissal of Plaintiff's Third and Fourth Causes of Action, ROP seeks an Order limiting Plaintiff's surviving FLSA claims to the two-year statute of limitations.

## VI.   INCORPORATION OF THE OTHER DEFENDANT'S ARGUMENTS

Pursuant to Fed. R. Civ. P. 10(c), ROP incorporates by reference all the applicable arguments and authorities contained in the pleadings filed by Defendant Martinez.

### <u>CONCLUSION</u>

Based on the foregoing arguments and authorities, ROP respectfully requests this Court dismiss all of Plaintiff's claims against ROP, which include Counts I, II, III, IV, V, VII, and IX in their entirety with prejudice.   In the alternative, ROP respectfully requests this Court dismiss Plaintiff's Counts I, II, V, VII, and IX in their entirety with prejudice, and limit the actionable time

---

[9] *See* https://www.colorado.gov/pacific/cdle/minimumwage.  The State minimum wage is an appropriate subject for judicial notice under Fed. R. Evid. 201. The rates are promulgated by orders from a Colorado State agency and may be readily determined from sources whose accuracy cannot be questioned.  Fed. R. Evid. 201(b)(2).

[10] See https://www.dol.gov/agencies/whd/minimum-wage/history/chart.  The federal minimum wage is an appropriate subject for judicial notice under Fed. R. Evid. 201. The rates are promulgated by orders from a federal agency and may be readily determined from sources whose accuracy cannot be questioned.  Fed. R. Evid. 201(b)(2).

period for Plaintiff's FLSA claims (Counts III and IV) to October 15, 2017 thru August 2, 2018. ROP additionally requests this Court enter all other and further relief as the Court deems just and appropriate.

Respectfully submitted this 20th day of December 2019.

 s/ *Aaron J. Thompson*
Aaron J. Thompson, Esq.
Gillian Dale, Esq.
HALL & EVANS LLC
1001 17th Street Suite 300
Denver, CO 80202
Tel: 303-628-3300; Fax: 303-628-3368
thompsona@hallevans.com;
daleg@hallevans.com
**ATTORNEYS FOR DEFENDANT
RITE OF PASSAGE**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 20th day of December 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following, and via E-mail as indicated below:

**Randolph H. Freckling (Via Cm/ECF)**
Randy@fmr.law
**[Attorney for Plaintiff]**

**Laren E. Knoll          (Via E-mail)**
lknoll@knolllaw.com
**[Attorney for Plaintiff]**

s/ *Marlene Wilson,* Legal Assistant to
Aaron J. Thompson, Esq.
Gillian Dale, Esq.
of HALL & EVANS, L.L.C.
1001 17th Street, Suite 300
Denver, CO 80202
Phone: (303) 628-3300
Fax: (303) 628-3368
thompsona@hallevans.com
daleg@hallevans.com
**ATTORNEYS FOR DEFENDANT RITE OF PASSAGE**